[No. 3,453.]

## SAMUEL OGBURN *v.* EDWARD CONNOR.

AN EASEMENT FOR THE ESCAPE OF WATER. — When two parcels of land, belonging to different owners, are adjacent to each other, and one is lower than the other, and the surface water from the higher tract has been accustomed, by a natural flow, to pass off over the lower tract, the owner of the lower tract cannot obstruct this flow. The owner of the upper tract has an easement to have the water flow over the land below, and the land below is charged with a corresponding servitude.

RIGHT ACQUIRED BY PRESCRIPTION.—An owner of land cannot acquire a prescriptive right to flood with water land higher than his own belonging to the United States, and the purchaser of such higher land from the United States may commence an action for the injury at any time within the statutory period after he buys from the United States, notwithstanding the fact that it may have been flooded while the United States owned it.

FILING FINDINGS AND JUDGMENT.—When a case is submitted in term, the findings and judgment may be filed in vacation; and, if exceptions are taken to the findings, additional findings may be filed.

IDEM.—When additional findings are filed, the presumption is, that exceptions for defective findings were filed and served, if the record is silent on the subject.

IDEM.—When additional findings are called for, they may be filed subsequent to the entry of the judgment.

APPEAL from the District Court Sixth Judicial District, County of Yolo.

The findings were filed in vacation, on the 14th day of June, 1872, and additional findings were filed on the 24th of June, 1872. The record is silent as to whether any exceptions were taken to the findings. The judgment was rendered on the 14th day of June, when the findings were filed. The defendant recovered judgment in the Court below, and the plaintiff appealed.

The other facts are stated in the opinion.

*Frost & Bush* and *Catlin & McFarland,* for Appellant.

It is conceded on the part of defendant, that the obstruction of a natural watercourse cannot be defended; but the principle is asserted that the law of such cases has no application to the obstruction of the flowage of surface water. The natural flow of the water in this case did not form a watercourse on plaintiff's land. It descended from plaintiff's and other lands adjoining, by flowing upon the surface, cutting no channel until it came upon defendant's land, where it concentrated itself into a natural depression or channel through which it passed into Willow Slough. The law applicable to this condition will be found to be the same

as that applicable to the obstruction of a creek or rivulet. (Angell on Watercourses, 6th ed., p. 126, Sec. 108.)

We think the law may be correctly stated thus : The owner of the upper or more elevated tract may utilize all the surface water upon his own land, even though such water, if let alone, would flow down upon his neighbor below. The water which rises upon, or falls upon, or flows upon a man's lands, has no public character until it has formed a running stream ; so that the owner of the adjoining tract acquires no right to the use of the water upon the upper tract unless it has been formed by nature into a definite watercourse. While the owner of the more elevated tract may use the surface water on his own land, he is not bound to use it, but has the right to have the same flow by its natural courses off his land upon the land below. The edition of Angell, quoted above, from page one hundred and twenty-six to one hundred and forty one, discusses and sustains this doctrine, and shows that it is clear and indisputable. The following cases are quoted : *Martin* v. *Riddle*, 26 Penn. St. 415, note ; *Kauffman* v. *Griesmer*, 26 Penn. St. 407 ; *Larrimer* v. *Francis*, 23 Mo. 181 ; *Bellows* v. *Sackett*, 15 Barb. 96 ; *Lattemore* v. *Davis*, 14 La. 161 ; *Bassett* v. *Galesbury Man. Co.* 43 N. H. 569 ; *Butler* v. *Peck*, 16 Ohio St. 334 ; *Beard* v. *Murphy*, 37 Vt. 99 ; *Bentz* v. *Armstrong*, 8 Watts & S. 40.

*J. C. Ball* and *Armstrong & Hinkson*, for Respondent.

The additional findings form no part of the judgment roll, and cannot be considered. The roll was made up when the findings were filed on the fourteenth of June. (Pr. Act, Sec. 180 ; *Carpenter* v. *Gardner*, 29 Cal. 163.)

Where there is no watercourse by grant or prescription, and no stipulation exists between conterminous proprietors of land concerning the mode in which their respective parcels shall be occupied and improved, no right to regulate or

control the surface drainage of water can be asserted by the owner of one lot over that of his neighbor. *Cujus est solum ejus est usque ad Cœlum* is a general rule applicable to the use and enjoyment of real property; and the right of a party to the free and unfettered control of his own land above, upon, and beneath the surface, cannot be interfered with or restrained by any considerations of injury to others which may be occasioned by the flow of mere surface water in consequence of lawful appropriation of land by its owner to a particular use or mode of enjoyment. (Angell on Watercourses, 6th ed., p. 122, Sec. 108 ; *Bowlsby* v. *Speer*, 31 N. J., 2 Vroom, 351; *Gannon* v. *Hargaden*, 10 Allen, 106; *Dickenson* v. *Wooster*, 7 Allen, 19; *Flagg* v. *Wooster*, 13 Gray, 602; *Bangor* v. *Lansil*, 51 Maine, 521 525; *Shields* v. *Arndt*, 3 Green Ch. R. 234; *Acton* v. *Blundell*, 12 M & W. 348; Gale on Easements, 251, 271; *Parks* v. *Newburyport*, 10 Gray, 28; *Luther* v. *Winnisimmet Co.*, 9 Cush. 171; *Ashby* v. *Wolcott et al.*, 11 Cush. 195.)

Can the plaintiff, by entering upon the adjoining land, which was public land at the time the act was done, make the act of the defendant in making the ditch and embankment unlawful, and maintain an action therefor, though the act was lawful when done? Or, in other words, does the defendant become a trespasser by relation? And, especially, can the plaintiff convert the act of the defendant into a trespass without making a demand upon the defendant to remove his ditch and embankment?

By the Court, BELCHER, J. :

The plaintiff was the owner of a farm adjoining and lying directly north of a farm owned by the defendant. A portion of the defendant's land was lower than the land of the plaintiff, and had extending through it a natural depression. There was no stream or watercourse upon the plaintiff's

land, but the surface water, falling upon it in times of heavy rains, and flowing upon it from other adjoining and still higher lands, was accustomed, before its flow was obstructed by the defendant, to pass off through the depression named over the land of the defendant into a large natural watercourse known as Willow Slough.

In 1863, and while the plaintiff's land was unoccupied public land of the United States, the defendant built along the north line of his land a ditch fence for the protection of his land and growing crops. This ditch fence consisted of a ditch and embankment with some rails or boards on top of the embankment, and was sufficient to partially obstruct the water which fell or collected upon the plaintiff's land, from flowing over the land of the defendant as it had been before that time accustomed to do. In 1869, the defendant strengthened and enlarged the embankment so as to form a more complete barrier to the passage of the water referred to. In December, 1871, very heavy and copious rains fell, and a large quantity of water therefrom collected upon the land of the plaintiff, but its passage off from the land was obstructed by the embankment erected by the defendant, and thereby a large part of the plaintiff's land was inundated and his growing crop of wheat injured to the amount of five hundred dollars.

This action was brought to recover for this injury, but the Court below being of the opinion that the defendant might lawfully protect his land by an embankment or other means, against the surface water flowing from the land of the plaintiff, and that the injury was therefore *damnum absque injuria*, rendered judgment for the defendant.

The question presented for decision is important and not free from difficulty. In Massachusetts the Courts have steadily adhered to the rule followed by the Court below. In that State it is said that "the obstruction of surface water, or an alteration in the flow of it, affords no cause of action

in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil." (*Gannon* v. *Horgadon*, 10 Allen, 110; *Parks* v. *Newburyport*, 10 Graff. 28; *Ashley* v. *Wolcott*, 11 Cush. 192.)

That rule has not, however, been generally followed in the other States, except in so far as it applies to town or city lots. (*Martin* v. *Riddle*, 26 Penn. St. 415; *Rauffman* v. *Griesemer*, 26 Penn. St. 407; *Martin* v. *Jett*, 12 La. 502; *Lattimore* v. *Davis*, 14 La. 161; *Delahousaye* v. *Judice*, 13 La. An. 587; *Butler* v. *Peck*, 16 Ohio St. 334; *Laumier* v. *Francis*, 23 Mo. 181; *Beard* v. *Murphy*, 37 Vt. St. 99; *Gillham* v. *Madison Railroad Co.*, 49 Ill. 484; *Gormley* v. *Sanford*, 52 Ill. 158; *Billows* v. *Sackett*, 15 Barb. 102.)

The prevailing doctrine appears to be that when two fields are adjacent and one is lower than the other, the owner of the upper field has a natural easement to have the water that falls upon his land flow off from the same upon the field below, which is charged with a corresponding servitude.

In *Martin* v. *Riddle*, the Court said: "When two fields adjoin and one is lower than the other, the lower must necessarily be subject to all the natural flow of water from the upper one. The inconvenience arises from its position, and is usually more than compensated by other circumstances. Hence the owner of the lower ground has no right to erect embankments whereby the natural flow of the water from the upper ground shall be stopped; nor has the owner of the upper ground a right to make any excavations or drains by which the flow of water is diverted from its natural channel and a new channel made on the lower ground; nor can he collect into one channel waters usually flowing off into his neighbors' fields by several channels, and thus increase the rush upon the lower fields."

In *Gillham* v. *The Madison County Railroad Company*, the Supreme Court of Illinois said that the doctrine of *Martin*

v. *Riddle* was the doctrine of the civil law, and has found favor in almost all the common law Courts of this country and of England.

In *Butler* v. *Peck*, the Supreme Court of Ohio said: " The principle seems to be established and indisputable that when two parcels of land belonging to different owners lie adjacent to each other, and one parcel lies lower than the other, the lower one owes a servitude to the upper to receive the water which naturally runs from it, provided the industry of man has not been used to create the servitude; or in other words, more familiar to students of the common law, the owner of the upper parcel of land has a natural easement in the lower parcel to the extent of the natural flow of water from the upper parcel to and upon the lower."

As the result of the cases upon the subject, Mr. Washburn, in his excellent work on Easements and Servitudes, states the rule thus: " It may be stated as a general principle that when the situation of two adjoining fields is such that the water falling or collected by melting snows and the like upon one naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land, if desired by the owner of the upper field.   But the latter cannot, by artificial trenches or otherwise, cause the natural mode of its being discharged to be changed to the injury of the lower field, as by conducting it by new channels in unusual quantities on the particular parts of the lower field." (2d ed. p. 427.)

Substantially the same question was before this Court in *Castro* v. *Bailey*, No. 2,023, decided at the October Term, 1869, and the judgment, which was for the plaintiff in the Court below, was affirmed here.

We are satisfied that the rule generally prevailing in this country is the better rule, and that it, and not the rule which obtains in Massachusetts, should have been followed by the Court below.

But it is said by counsel for respondent that the answer alleged that the plaintiff, by means of ditches constructed by him, had concentrated the water upon his own land, and carried the same by new channels upon the defendant's land; that in support of the judgment these facts will be presumed to have been found in favor of the defendant, and the plaintiff, therefore, was not entitled to recover. The obvious answer to this position is that the Court negatived this allegation of the answer by finding that there was no watercourse or stream upon the plaintiff's land, but that all the water falling thereon was accustomed to descend upon the land of the defendant by reason of the natural depression of the soil.

It is further urged that the plaintiff ought not to be permitted to recover because the defendant constructed his embankment before the plaintiff purchased his land of the Government, or had settled thereon.

The argument is not sound. While the upper portion belonged to the Government the defendant could gain no prescriptive right to obstruct the natural flow of the water therefrom. When the plaintiff purchased he acquired all the rights which the Government had in the land at the time of its sale; one of these rights, as we have seen, was the right to have all surface water collected upon it flow off freely and without obstruction upon adjoining lower lands.

The point is made that the "additional findings made at request of plaintiff," cannot be considered; but we think it not well taken. The case was tried and submitted to the Court, and afterwards, in vacation, the findings and judgment were filed with the Clerk. Ten days subsequently the "additional findings" were filed. The statute authorized exceptions for defective or insufficient findings, and we must presume such exceptions were filed and served. It is settled

that when a cause is submitted in term, the findings and judgment may be filed in vacation. And when additional findings are called for they may be and ordinarily must be filed subsequent to the entry of judgment.

The judgment is reversed and cause remanded, with directions to the Court below to enter judgment for the plaintiff upon the findings.

Mr. Chief Justice WALLACE did not express an opinion.

[NOTE.—The case of *Castro* v. *Bailey*, mentioned in the opinion, is not reported, but is mentioned in 38 Cal. as a case not reported.—REPORTER.]