# SECOND DEPARTMENT.

## GENERAL TERM, DECEMBER, 1874.

---

### WAGNER v. LONG ISLAND RAILROAD COMPANY.

*Adjoining lands — flow of surface water — Water-course — what is not.*

No action will lie against a party for so changing the surface of his own land as to dam up and obstruct the flow of the surface water which has been accustomed to flow over and across the lands of his neighbor.

To maintain the right to a water-course it must be made to appear that the water usually flows in a certain direction and by a regular channel, with banks or sides. It need not flow continually, and may at times be dry, but it must have a well defined and substantial existence.

A complaint set forth that during the winter season large quantities of water flowed from some distance above plaintiff's premises along side and parallel to a highway, and passed plaintiff's premises without collecting there; that a railroad company, whose lands adjoined plaintiff's, so constructed an embankment as to cause such water to collect on plaintiff's lands. *Held,* (1) not a water-course, and (2) that an action was not maintainable for the obstruction.

APPEAL by defendant from a judgment in favor of plaintiff entered upon the verdict of a jury and from an order denying a new trial.

The action was brought in Suffolk county by John Wagner, to recover damages for injury done to plaintiff's premises and property thereon by reason of the alleged negligent construction of an embankment on defendant's railroad. Plaintiff was the owner of a lot of land in the town of Southampton, in said county, and the defendant was the owner of land adjoining, which it had purchased from plaintiff. Plaintiff's dwelling-house, which was situated on this lot, was nearly at the bottom of a valley, and before the railroad was built the highways crossing this valley were on a level with the surrounding land, and the surface water from the land above defendant's premises, which gathered at every rain and from

the snow in winter, ran freely by said premises, along and across the highways, and was discharged into what is known as the Shinecock Bay. The defendant built an embankment fifteen feet high across this valley and placed no culvert therein, and raised the highways. The complaint alleged that by reason of these obstructions the water accumulated in large quantities and ran into plaintiff's house and caused the damage complained of. Other facts sufficiently appear in the opinion.

*Wm. Wickham* and *R. S. Green*, for appellant.

*George W. Whitaker*, for respondent.

TALCOTT, J. This is an action to recover damages against the defendant for constructing the embankment for its road along and across the adjoining land of the plaintiff, whereby the usual flow of the water across and off from the plaintiff's premises was dammed up and obstructed and caused to accumulate, whereby the plaintiff sustained damage.

It seems to be perfectly well settled that no action will lie against a party for so using or changing the surface of his own land, as to dam up and obstruct the flow of surface water which has been accustomed to flow over and across the lands of his neighbor. The question involved in the case is precisely the same in principle as that which came before the supreme court of Massachusetts, in *Parks* v. *City of Newburyport*, 10 Gray, 28. In that case the judge on the trial had instructed the jury, that if, for twenty years, the water accumulating on the land, in the rear of the lots in question, had been accustomed to find its outlet over the lands of the defendants, and the same had been obstructed by the acts of defendants in such a way as to turn it from their own land across land of the plaintiff, and occasion a substantial injury to the property of the plaintiff without his fault, or want of care on his part, then the defendants would be liable. The plaintiff having recovered under this instruction, the verdict was set aside upon the following opinion by the court: "The declaration is for obstructing a water-course, and the instruction allowed the jury to find for the plaintiff, though there was no water-course. No action will lie for the interruption of mere surface drainage." See, also, *Dickinson* v. *City of Worcester*, 7 Allen, 19; *Sweet* v. *Cutts*, 50 N. H. 439; *Goodale* v. *Tuttle*, 29 N. Y. 466.

These principles in the abstract were conceded by the learned justice who tried the cause, but we think the defendant was deprived of the benefit of them by the refusal to non-suit, and by certain instructions which were given to the jury. It was left to the jury to find upon the evidence, whether there existed a water-course, which the defendant had obstructed. We think this was erroneous in this case, both upon the pleadings and the evidence. First it is to be observed that the plaintiff did not, in his complaint, claim that there had existed over this land any stream or water-course which the defendant had obstructed. He says, "that prior to the construction of such embankment, during the winter season, large quantities of water flowed, from some distance above the plaintiff's premises, along and parallel with the aforesaid highway, and passed the plaintiff's premises without collecting there." This is a statement which seems plainly to mean that such had been the natural flow of the surface water, and such, we think, the evidence, on the part of the plaintiff, plainly showed it to be in fact. The plaintiff's complaint was plainly founded on the theory that the defendant could not lawfully make any embankment on its own land which would so obstruct the natural flow of the surface water, during thaws and freshets, as to cause it to accumulate on the land of the plaintiff, but was bound, by means of sufficient culverts or otherwise, to provide some means whereby this water should be disposed of. And the gravamen of the plaintiff's action was the alleged negligence of the defendant in constructing its embankment without providing sufficient pipes and culverts to discharge the surface water.

A water-course, according to the definition of the authorities, "consists of bed, banks and water, yet the water need not flow continually," and there are many water-courses which are sometimes dry. There is, however, a distinction to be taken in law between a regular flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water, which, in times of freshet or melting of ice and snow, descend from the hills and inundate the country. To maintain the right to a water-course or brook it must be made to appear that the water usually flows in a certain direction, and by a regular channel with banks or sides. It need not be shown to flow continually, as stated above, and it may at times be dry, but it must have a well defined and substantial existence. Angell on Water-courses, § 4. Water

flowing through a hollow or ravine only in times of rain, or melting of snow, is not in contemplation of law a water-course. Ib. § 4. The plaintiff, as we think, not only failed to allege, but also to give any evidence tending to show the existence of any water-course, which the defendant had obstructed, and the motion for a non-suit should have been granted.

We think, also, that portions of the charge excepted to were calculated to mislead the jury. In one portion of the charge the court, after having submitted to the jury the question as to whether there was a living, running stream obstructed by the embankment, said: "You are to say whether this was practically a running stream over which the railroad company were bound to build a culvert so as to furnish drainage for it. *In other words, whether they were justified in building a tight dam across this valley, no matter whether the plaintiff's property was submerged or not.*" It seems to us that this charge was calculated to withdraw the attention of the jury from the true question at issue, if any there were, and to substitute in place of it a question to be determined by them, as to whether the defendant ought not, as a mere matter of fairness, and without any question of legal obligation, under all the circumstances, to have constructed culverts in their embankment to facilitate the drainage of the plaintiff's land.

The judgment is reversed and a new trial ordered, costs to abide the event.

*Judgment reversed and new trial ordered.*

NOTE.—In *Ogburn* v. *Connor*, 46 Cal. 346; S. C., 13 Am. Rep. 213, the defendant owning lands adjoining and below unoccupied public lands of the United States, built an embankment along his lands to obstruct the flow of the surface water from the adjoining lands. Plaintiff afterward purchased said public lands and brought action to recover damages done to his land and crops by means of said embankment. *Held* (1), that plaintiff had a natural easment to have the surface water from his lands flow off upon the lands below, and that defendant was liable for obstructing such flow, and (2), that defendant could gain no prescriptive right against the United States, and, therefore, plaintiff was not prejudiced by the fact that the embankment was built before he purchased the land.

In that case the question is very elaborately examined in the opinion of BELCHER, J., who states that while the rule adopted in the principal case has been steadily adhered to by the courts in Massachusetts ( *Gannon* v. *Hagadorn*, 10 Allen, 110; *Parks* v. *Newburyport*, 10 Gray, 28; *Ashley* v. *Wolcott*, 11 Cush. 193), it has not been generally followed in other states except in so far as it applies to town and city lots. See *Martin* v. *Riddle*, 26 Penn. St. 415; *Kauffman* v. *Griesemer*, 26 id. 407; *Martin* v. *Jett*, 12 La. 504; *Lattimore* v. *Davis*, 14 id. 161; *Dilahousaye* v. *Judice*, 13 id. 587; *Butler* v. *Peck*, 16 Ohio St. 334; *Laumier* v. *Francis*, 23 Mo. 181; *Beard* v. *Murphy*, 37 Vt. 99; *Gillham* v. *Madison R. R. Co.*, 49 Ill. 484; *Gormley* v. *Sanford*, 52 id. 158; *Bellows* v. *Sackett*, 15 Barb, 110. See, also, Washb. on Easm., 353–362.—REP.