[No. 13173.   In Bank. — April 1, 1890.]

# E. McDANIEL, Appellant, v. M. CUMMINGS, Respondent.

Easements — Construction of Code. — Section 801 of the Civil Code merely enumerates and defines the different kinds of easements which may be appurtenant to land; and does not prescribe or regulate the manner of acquiring them.

Id. — Creation of Easements — Contract — Common Law. — Ordinarily an easement is created by contract or grant, express or implied; but with respect to the flow of surface water, the question of easement or no easement depends upon the law defining the mutual rights and obligations of the owners of adjoining lands, which are regulated in this state by the common law.

Id. — Water Rights — Flow of Surface Water — Stare Decisis — Flood Water Distinguished from Surface Water. — The case of *Ogburn* v. *Connor*, 46 Cal. 346, is affirmed on the principle of *stare decisis*, to the effect that the owner of an upper tract has an easement to have the surface water which has been accustomed by a natural flow to pass off from his land, over the land below, flow over such land, without obstruction; but the rule thus affirmed is confined to surface water having its sources in springs or descent from the clouds in the form of rain or snow, which the owner of the higher land cannot keep out by any practicable means, and does not apply to flood waters, which the owner of the higher land may restrain by the same means employed by his neighbor.

Id. — Injunction against Levee — Overflow of Sacramento River. — A proprietor of higher land bordering on the Sacramento River cannot

| | |
|---|---|
| 83 | 515 |
| 98 | 162 |
| 83 | 515 |
| 106 | 280 |
| 83 | 515 |
| 118 | 288 |
| 83 | 515 |
| 124 | 665, |
| 83 | 515 |
| 136 | 472 |
| 136 | 473 |
| 83 | 515 |
| 146 | 319 |

enjoin the erection of a levee or embankment by the proprietor of lower land adjoining his in the rear, the design of which is to prevent the overflow of the river from flooding the lower land, though such embankment may increase the accumulation of flood water on the higher land; the owner of the higher land having like means of protecting his own land.

APPEAL from an order of the Superior Court of Colusa County dissolving an injunction.

The facts are stated in the opinion of the court.

*H. M. Albery*, for Appellant.

*Edwin Swinford*, and *John T. Harrington*, for Respondent.

BEATTY, C. J.—Defendant owns the west half of a certain section, No. 26, in Colusa County. Plaintiff owns land adjoining on the west. Still farther to the west, at a distance of about two miles from plaintiff's land, the Sacramento River flows from north to south. The land next the river is the highest, there being a gradual descent from the river bank to and beyond the land of defendant. When the river rises above the level of its banks,—as it generally does several times during every rainy season,—the water flows off to the east or southeast across the land of plaintiff, and other lands similarly situated, to and across the land of defendant, and other lands in the same relative situation. It does not flow in any narrow or defined channel or channels, but in a broad sheet covering a wide surface. When the river falls below the level of the banks, the overflow cannot, of course, find its way directly back into the stream, and consequently the lands near the river are drained by the spread and flow of water toward the east and southeast, across the lower lands such as those of defendant. Left unobstructed in their natural and accustomed flow, these waters soon pass beyond the plaintiff's lands, leaving them fit for cultivation.

But recently the defendant, without intending to in-

jure the plaintiff, and acting upon the *bona fide* belief
that he had the right so to do, commenced, and was pro-
ceeding to complete, a levee or embankment along his
west line, the necessary effect of which will be to prevent
the flood water from passing over his land, and to set
it back upon the plaintiff's land, causing it to cover a
larger area thereof, and to remain thereon for a longer
period, than it otherwise would.

The plaintiff thereupon commenced this action to en-
join the defendant from erecting or maintaining said
levee. A temporary injunction was issued upon the
filing of the complaint. Afterward, on motion of the
defendant, and upon affidavits showing the state of facts
above set forth, the superior court dissolved the injunc-
tion, on the ground that the defendant in erecting and
maintaining his levee was acting within and according
to his rights.

From this order dissolving the injunction plaintiff
appealed, and on September 12, 1889, an opinion was
filed by this court reversing the order upon the authority
of *Ogburn* v. *Connor*, 46 Cal. 346. A rehearing was sub-
sequently granted upon petition filed on the part of the
defendant, in which the correctness of the decision in
*Ogburn* v. *Connor* is assailed, as is also the construction
which we gave to section 801 of the Civil Code.

I think there can be no doubt that we were in error
in holding that section 801 of the Civil Code gives to
the owner of higher land an easement for the discharge
of surface water upon lower land adjoining. That sec-
tion merely enumerates the different kinds of burdens
or servitudes upon lands that may be attached as inci-
dent or appurtenant to the other lands; or in other
words, it is a mere definition of easements appurtenant,
and makes no pretense of prescribing or regulating the
manner of acquiring them.

Among the other easements defined are: "9. The right
of receiving water from or discharging the same upon

land; . . . . 11. The right of having water flow without diminution or disturbance of any kind." Undoubtedly these are easements which may exist as appurtenant or incident to the lands of one and as servitudes or burdens upon the land of another, but the question here is not as to what an easement or a servitude is, but as to how it is created and when it attaches. In the solution of this question we derive no assistance from section 801 of the Civil Code. That section is no more authority for saying that the plaintiff has an easement for the discharge of surface water according to its natural flow from his land to that of defendant than it is for saying that he has any other of the seventeen kinds of easements enumerated; as, for instance, — " 1. The right of pasture; 2. The right of fishing; 3. The right of taking game; . . . . 17. The right of burial." How, then, is the existence of an easement in any particular case to be determined? Ordinarily an easement is created by contract between the owners of different parcels of land, that is to say, by grant, either express or implied, but with respect to rights such as that in controversy here, the question of easement or no easement depends upon the law defining the mutual rights and obligations of the owners of land in the relative situations of the tracts belonging to the plaintiff and defendant. What, then, was the law applicable to these lands at the date of their acquisition? It does not appear when either of the parties acquired his land, but it is to be presumed it was subsequent to the 30th of April, 1850, at which date it was enacted that " the common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of the state of California, shall be the rule of decision in all the courts of this state." (Stats. 1850, p. 219.) This rule continues in force. (Pol. Code, sec. 4468.)

As there is nothing in the constitution of the United States, or in the constitution or statute law of this state,

to which the common-law rule on this subject, whatever it may be, can be repugnant, it is manifest that the whole question is solved whenever it is determined what the common-law rule is.

In the case of *Ogburn* v. *Connor*, 46 Cal. 346, this precise question was presented, and it was then determined that "when two parcels of land, belonging to different owners, are adjacent to each other, and one is lower than the other, and the surface-water from the higher tract has been accustomed, by a natural flow, to pass off over the lower tract, the owner of the lower tract cannot obstruct this flow. The owner of the upper tract has an easement to have the water flow over the land below, and the land below is charged with a corresponding servitude."

This, of course, was intended as a statement of the common-law rule, for otherwise it could not have been the law of this state. But counsel for respondent contends, and counsel for appellant seems to admit, that it is really a statement of the rule of the Roman civil law, and that it is the exact opposite of the common-law rule.

It must be confessed that this proposition seems to be sustained by many of the cases cited in the briefs, and if the question were now to be decided for the first time, I should certainly find great difficulty in arriving at the conclusion reached by the court in the case referred to. But that decision was rendered seventeen years ago, following a previous case, not reported, entitled *Castro* v. *Bailey*, and has stood unchallenged ever since.

Necessarily, it has become a rule of property and of right respecting interests which have vested during that long interval, and it cannot now be disturbed without manifest injustice to all who have acted upon the faith of it. If it be erroneous, it must nevertheless be upheld upon the principle of *stare decisis*, and so far as our action is concerned, the rule must continue to obtain as it is there laid down.

But counsel for respondent, although originally conceding that the order appealed from must be reversed, unless the decision in *Ogburn* v. *Connor*, 46 Cal. 346, was repudiated, now contend that the cases may be distinguished, and that this order should be affirmed on the principle applied in *Lamb* v. *Reclamation District*, 73 Cal. 125. In that case this court adopted and applied to the flood waters of our large rivers the principle laid down in the English case of *Rex* v. *Commissioners etc.*, 8 Barn. & C. 355, with respect to the waters of the sea, viz., that they are a common enemy against which every man has a right to defend himself, regardless of the fact that the barriers he erects for the protection of his land may cause the flood to rise higher or flow with greater force upon his neighbor.

We think this is the true principle to apply to the case of parties in the relative situation of the plaintiff and defendant here, especially in view of the policy of all our state legislation respecting our overflowed lands.

If the owner of the land next to the river will not, either by himself or in combination with those behind him, erect a levee on the bank, he ought not to be allowed to prevent them from protecting themselves merely because by so doing they prevent his higher land from being drained of the flood waters as rapidly as it otherwise would be. Because his land may be cultivated without artificial protection, he ought not to be allowed to prevent others from using proper means to make their lands productive; and what is true of the owner of the river bank is true in the same sense of each successive owner back of him. It is the interest of all to combine and share the expense of placing a levee on the bank by which all will be protected; but if those in front will not co-operate with those behind, and will do nothing for themselves, they must not be allowed to stand in the way of those whose necessities compel them to act.

There is no necessary conflict between these views or the principles they sustain and the decision in *Ogburn* v. *Connor*. That decision refers to surface water having its sources in springs or descending from the clouds in the form of rain or snow waters, — waters, that is to say, which the owner of the higher land cannot keep out by any practicable means. It does not apply to flood waters which the owner of the higher land can restrain by the same means employed by his neighbor.

In this case it does not appear that defendant's dam will cause the plaintiff any injury by holding back the rain-water falling on his land, or any water except the overflow of the Sacramento River. As against that, we think the defendant is entitled to protect himself, and that the plaintiff, if he finds it necessary, may do the like.

Order affirmed.

PATERSON, J., SHARPSTEIN, J., FOX, J., and McFARLAND, J., concurred.