[18098.   Department One.— April 20, 1893.]

## MARY GRAY, RESPONDENT, *v.* A. S. McWILLIAMS, AP-PELLANT.

EASEMENT—FLOW OF SURFACE WATER. — A natural easement exists in favor of the owner of a higher tract, the surface water from which has been accustomed by a natural flow to pass off over a lower adjacent tract, to have such water flow over the lands below, and the lower tract is charged with a corresponding servitude.

ID. — OVERFLOW OF WATER FROM STREAMS. — The owners of land along the rivers of the state are not subject to an easement or servitude for the overflow of water therefrom, and if the owner of a higher tract fails to erect embankments or levees to protect his land from the effect of floods, the owner of lower adjacent land may protect his land therefrom by erecting a levee on his own land, though its effect may be to increase the flood waters on the higher land of his neighbor.

ID.— SEEPAGE FROM LEVEE — SURFACE WATER — OBSTRUCTION OF FLOW — NUISANCE. —Water which seeps through a large and high levee protecting all the lands adjoining a river from overflow, and which gradually seeks a lower level, not in a defined channel, but as surface water is wont to do, by percolation and by the force of gravity, should be permitted to pass off by natural flow, like other surface water coming without volition from the clouds or rising to the surface from springs, and the owner of higher land has an easement for such natural flow over the adjoining lower land; and where the owner of lower land erects an embankment upon his land which keeps back both the ordinary surface water which would flow naturally over it, and the seepage from the levee, which would otherwise pass off without detriment to any one, and thereby causes the water to flood the higher land above, the owner of such higher land is entitled to maintain an action to remove and abate such embankment as a nuisance.

APPEAL from a judgment of the Superior Court of Colusa County and from an order denying a new trial.

| 98 | 157 |
| 103 | 467 |
| 118 | 288 |
| 98 | 157 |
| 128 | 233 |
| 98 | 157 |
| 136 | 469 |
| 98 | 157 |
| 146 | 319 |

The facts are stated in the opinion.

*U. W. Brown,* for Appellant.

*H. M. Albery,* and *K. Albery,* for Respondent.

SEARLS, C.—Action to remove and abate as a nuisance an enbankment or levee, erected by defendant upon his own land, but which held back and caused water to flow upon the land of plaintiff, and to recover damages for injury caused thereby. Plaintiff had judgment, from which and from an order denying a motion for a new trial defendant appeals.

The plaintiff, Mary Gray, has been since 1888 the owner in fee in her own right, and in possession of a tract of land consisting of over forty acres, situate in the county of Colusa.

The defendant, A. S. McWilliams, is and since September, 1887, has been the owner of and in possession of a tract of land of over two hundred acres, lying south of and adjoining plaintiff's land for a distance of eighty rods.

Upon the dividing line, between the land of plaintiff and defendant, is a roadway or avenue fifty feet wide, known as "Fruitvale Avenue." Upon the center of this avenue is an enbankment, constructed in 1884 by the grantors of plaintiff and defendant, for the double purpose of a roadway, and as a check to hold water for irrigation purposes. This enbankment, which runs east and west, if maintained in tact throughout its length prevents the water accumulating on the north side from flowing in a southerly or southwesterly direction to and upon the land of defendant, and, as a consequence, causes or tends to cause the same to accumulate upon the land of plaintiff. In the winter of 1889 and 1890, defendant closed up a waterway through this embankment, in consequence of which plaintiff's land was flooded, her orchard thereon injured, etc. The land north and east of that of plaintiff is slightly higher than plaintiff's land, there being a slight slope over the lands of plaintiff and defendant toward the southwest. These lands are all on the west side of the Sacramento River, and east of them and on the west side of said river is a large levee to protect the country from overflow in times of flood. West of this large levee, and east of the lands of the plaintiff and defendant, is a

raised wagon road leading from Colusa to Princeton, the general course of which is northwest and southeast. Through the embankment of this road there are several openings or waterways.

The court finds that commencing at the Princeton road there is a trough, water-course, or washout, running thence in a southwesterly direction across the lands of plaintiff and defendant, crossing " Fruitvale Avenue" in its course. This "trough, water-course, or washout" across plaintiff's land, and for one hundred feet on the land of defendant, has abrupt banks, is about three feet deep, and from twelve to fourteen feet wide. From a point on defendant's land, say one hundred feet from his north line, this trough subsides into a depression or swale, which extends for a couple of miles in a southwesterly direction to Hoppins slough, which in turn connects with a large natural water-course, called the "Trough," etc.

The court finds that this trough, water-course, or washout was formed naturally by the action of the water, has existed certainly since 1881, and serves in time of rainy weather or high water to drain and carry off the surface and surplus water from plaintiff's land and from lands of others naturally draining upon and over hers.

The court finds, as to the sources from which the waters thus accumulating upon plaintiff's land came, as follows: —

"IX. That the water thus thrown back upon the plaintiff's land was surface water, and was composed partly of seepage water, escaping from the Sacramento River by percolation through the river levee, and partly of rain fall; but what portion of said water was seepage or percolating water, and how much thereof was rain water cannot be found or determined from the evidence ; but there was no rush or great flow or volume of water spreading over the surface of the soil as in case of flood or overflow from the river, and at no time did it appear in such quantities but that it would have naturally passed off in the said waterway or trough on plaintiff's and defendant's lands, had there been no obstruction in said waterway or trough."

There is a branch ditch on the west side of the Princeton road, which defendant claims by his answer served to concentrate the surface waters and seepage water coming from the

Sacramento River, and pour them upon plaintiff's land at a fixed point, etc., but as the finding of the court is against this view, the facts connected therewith need not be mentioned at length. Like considerations apply to matters of estoppel and prescription.

To say that the evidence is sharply contradictory scarcely conveys an adequate idea of the antagonisms it presents. There is hardly an issue made in the case but that might have been decided differently, and the conclusion would have found support in the evidence.

After the findings in the cause were filed, counsel for defendant asked the court, in addition to its findings, to pass upon eighteen additional propositions, which were offered in writing, which request was refused.

Some of these propositions involved facts and issues already passed upon; others may be regarded as involving evidentiary rather than ultimate facts, and while it would have been of interest here to have had an exposition of a few of them, we cannot say in the face of the somewhat full and explicit findings, that any error was committed by the court in its refusal.

Among the conclusions of law deduced by the court were:—

1. That plaintiff's land is the dominant tenement, and defendant's land the servient tenement; that the water which was obstructed, and caused the injury to plaintiff, was surface water, and that the plaintiff had an easement, and defendant owed plaintiff a servitude for the flowage of such water from plaintiff's land onto and across defendant's land.

2. That the embankment of earth or obstruction complained of was a nuisance, and should be abated as such, etc.

Had plaintiff an easement in the land of defendant for the flow of the water in question over it?

"An easement is a privilege without profit, which the owner of one tenement has a right to enjoy in respect of that tenement, in or over the tenement of another person, by reason whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former." (Goddard on Easements, p. 2; *Stevenson* v. *Wallace*, 27 Gratt. 87; *Rilger* v. *Parker*, 8 Cush. 147.)

"A charge or burden upon one estate (the servient) for the

benefit of another (the dominant)." (*Morrison* v. *Marquardt*, 24 Iowa, 35; 92 Am. Dec. 444.)

Easements are of two kinds, similar to one another in many respects, but differing in many particulars. To the first class belong those easements created by act of man, and to the second those which are given by the law to every owner of land. This latter class is given by law, because without them there would be no security in the enjoyment of land by its owner. Without them a neighbor might deprive a land-owner of the benefits derivable from things which in the course of nature have been provided for the common good of all, and which the law wisely provides shall not be wrested from one by the act of another. These easements are said to be inherent in the land *ex jure naturale*, and are often termed " natural rights."

A careful review of the adjudicated cases will, it is believed, show that a good deal of obscurity has been thrown around many questions connected with the subject under consideration, by a failure to observe the line of demarcation between these two classes of easements. As it is with the latter class that we have exclusively to do in the present case, we must eliminate from consideration such rules of construction as apply exclusively to easements founded upon grant or prescription.

What then is the "natural right" of the plaintiff in the premises? It is claimed that at common law it was held that no natural easement or servitude existed in favor of the owner of the superior or higher land, as to mere surface water, or such as falls or accumulates by rains or the melting of snow; and that the proprietor of the inferior or lower tenement or estate might at his option lawfully obstruct or hinder the flow of such water thereon, and in so doing might turn back or off of his own lands and onto and over the lands of other proprietors such water without liability by reason of such obstruction or diversion. It is also claimed that the doctrine of the civil law is almost directly the reverse of that of the common law, and that under it the owner of the upper or dominant estate has a natural easement or servitude in the lower or servient one to discharge all waters falling or accumulating on his land which is higher, upon or over the land of the servient owner as in a state of nature; and that such natural flow or passage of the waters cannot be interrupted

or prevented by the servient owner to the detriment or injury of the estate of the dominant proprietor. And as that conclusion is in unison with the doctrine on the same subject of the courts of fully one half of the states of our union, all professing to be controlled as we are by the common law, we are justified in saying that with us the rule established has become and is a part of our common law.

In the case of *Ogburn* v. *Connor*, 46 Cal. 347; 13 Am. Rep. 213, this court, in a well-considered opinion, held in substance that where two parcels of land belonging to different owners are adjacent to each other, and one is lower than the other, and the surface water from the higher tract has been accustomed by a natural flow to pass off over the lower tract, the owner of such upper tract of land has an easement to have the water flow over the land below, and the lower tract is charged with a corresponding servitude.

In *McDaniel* v. *Cummings*, 83 Cal. 515, the court was urged to overrule *Ogburn* v. *Connor*, but refused to do so, placing such refusal upon the ground of *stare decisis.* The case was, however, distinguished from *Ogburn* v. *Connor*, and passed off upon the principle laid down in *Lamb* v. *Reclamation District*, 73 Cal. 125; 2 Am. St. Rep. 775.

In view of the reasoning and conclusions in *McDaniel* v. *Cummings*, and *Lamb* v. *Reclamation District*, it may be fairly assumed, as the *consensus* of opinion on the part of the court:—

1. That the owner of the lower or servient tenement must permit the surface water from the higher land of his neighbor to flow unobstructed over his lower land, as held in *Ogburn* v. *Connor*, 46 Cal. 347; 13 Am. Rep. 213.

2. That the rule of *Ogburn* v. *Connor* does not apply to the overflow of water from the large rivers of the state, and that the owners of land along such streams have a right to construct levees or embankments for the protection of their lands from the ravages of flood waters, although the effect thereof may be to prevent the free discharge of such flood waters in as large and ample a manner as they would otherwise do, or may tend to increase the flow of water upon lands not similarly protected, as was held in *Lamb* v. *Reclamation District*, 73 Cal. 125; 2 Am. St. Rep. 775.

3. That if the owner of higher land upon a river subject to overflow, fails to erect levees or embankments to protect his land from the effect of floods, his neighbor owning lower land in his rear may protect himself from such floods by erecting a levee upon his own land, although the effect thereof may be to increase the flood waters on the higher land of the neighbor, who has not resorted to like means of protection, as was held in *McDaniel* v. *Cummings*, 83 Cal. 515.

If there is an essential difference in the conclusions reached in these several cases, the reasons for such difference are to be found in the elementary facts forming their basis.

In the case of flood waters escaping from natural streams, we view them, it is true, as a common enemy, against which we may protect ourselves without the commission of a wrong; but after all, this declaration is used in view of the means of defense resorted to rather than in the abstract. We build the banks of the river higher for our protection, it is true, but in so doing we aid nature in her effort to carry the water to its ultimate destination, and he who to protect himself from a flood should erect a barrier across the channel of one of our important rivers, would probably be met with the declaration that it was not the proper mode of warfare, even against a "common enemy."

In the case of surface waters having no defined channels of escape, and the owner of the land upon which they are found being impotent to rid himself of their presence, the law wisely provides that the laws of nature shall be left untrammeled in their disposition.

Was the water held back by defendant's embankment surface water, in the sense that defendant was legally inhibited from retarding its passage over his land?

Surface water is usually defined to be such as falls from the clouds in the form of rain or snow, or rises to the surface in springs. The reason why the owner of the higher land has an easement in the lower land for their escape is to be found, not so much in the source from which they are derived, as in the fact that nature has adopted this method of ridding the land of their presence in surplus quantity.

I can see no good reason why the water which accumulated upon the land of plaintiff should not be subject to the rules in

regard to surface water, as defined in *Ogburn* v. *Connor*, 46 Cal. 347; 13 Am. Rep. 213.

A portion of such water (how much the court cannot determine) came from the seepage through the levee built to protect, or which at least does protect, all these lands from overflow. The evidence showed that this river levee was a large and high one; that the winter of 1889–90 was one of heavy floods; that for some months the water was several feet above the general level of the country, and that gradually the levee became saturated until the water seeped or percolated through and under it; that it came to the surface much as springs do, and gradually sought a lower level, not in a defined channel, but as surface water is wont to do, by percolation and by the force of gravity. It came without any act or agency of the plaintiff, and as she was, so far as appears, powerless to direct its course, it would seem rational to say that like other surface water coming without volition, it should be permitted to pass off by the method devised by nature.

It must be within the observation of many of us that these large levees in time of protracted flood, however well constructed, are not so impervious to water under pressure but that percolation or seepage to some extent is liable to occur. Constructed as they are in this state, under the encouragement of law, for the general benefit, and effecting as they usually do great good to individuals and communities, it would seem natural that the minor inconveniences inevitable and inseparable from their existence should be borne by those upon whom they naturally fall, and that to concentrate the whole effect upon a single individual is not in consonance with our views of justice under such circumstances. Had the defendant left the waterway through Fruitvale Avenue open, as he was in duty bound to do, to allow the escape of what, beyond all cavil, was the surface water upon the land of plaintiff, this seepage water, according to the finding of the court, would have passed off without injury to plaintiff, and, so far as appears, without detriment to any one. If the presence of this seepage water enhanced the servitude imposed upon defendant's land, it was without the action of plaintiff, and was and is a condition not dependent upon the acts of the parties, the result of which all the land-owners subject to its effect must bear in their turn.

The only theory suggesting itself under which a different conclusion could be reached is to be found in the doctrine of *McDaniel* v. *Cummings*, 83 Cal. 515, holding that upon the failure of the land-owner next the river to construct a levee, the owner of lower land in the rear of him can do so, even though the higher land near the river is surcharged with flood water as a consequence.

If this may be done, it may be asked in case a levee is built by the land-owner next the river, as in this case, which restrains the major portion of the flood water, why may not the owner of lower land in the rear, as in case of this defendant, protect himself from the minor portion or seepage water by a sub-levee, even though it increases the quantity of water upon the owner of higher land, as in case of plaintiff here?

The answer must be that the rule enunciated in *McDaniel* v. *Cummings* was in consonance with a sound public policy favoring a cherished object, viz., the reclamation and improvement of valuable lands subject to overflow, and was well calculated to meet and do justice in cases where the owners of higher lands along the rivers refuse or neglect to construct levees or to join with their neighbors in doing so. It does not apply here, because a main levee has been built upon the higher land contiguous to the river, which appears to effect, in the main, the object of its construction.

To permit each owner of lower lands in the rear to construct sub-levees to hold back the seepage water escaping from the main levee would be to permit them to flood the protected higher land in front, and thus practically to frustrate the beneficial results of the main levee. Such a rule, when thus extended, would tend to retard rather than promote improvement and consequent prosperity.

As a conclusion, after a careful examination of the case in all its different aspects, it is held that the court below was correct in its conclusions that plaintiff, as the owner of the higher land, had an easement or right to have all the water in question, including what was termed "seepage water," flow from her land to, upon, and over the land of defendant, and to that extent the land of defendant was servient and that of the plaintiff the dominant tenement.

The judgment and order appealed from should be affirmed.

Temple, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Harrison, J., Garoutte, J., Paterson, J.

Hearing in Bank denied.