[Civ. No. 4542. First Appellate District, Division Two.—August 16, 1923.]

## MARY E. McCARTHY, Respondent, v. MILES STANDISH et al., Appellants.

[1] WATERS AND WATER RIGHTS—OBSTRUCTION OF WATERCOURSES—INJUNCTION — RAIN WATERS—EVIDENCE.—In this action by a land owner to enjoin owners of land adjoining but situated below that of plaintiff's from obstructing certain alleged watercourses running over the lands of both parties, the contention that the evidence does not show that rain waters are carried across the plaintiff's land on to the land of defendants cannot be sustained.

[2] ID.—INSTALLATION OF BOX-OUTLETS IN WATERCOURSES—ORDER DIRECTING—ABSENCE OF ERROR.—In such action, the trial court did not commit error in directing the installation of box-outlets of specific dimensions in each of the two watercourses running from plaintiff's land to and over defendant's land on the boundary line of said lands.

[3] ID.—DEFENSE—SIZE OF DITCH—FINDINGS.—In such an action, the defendants cannot successfully claim that the trial court did not find on certain allegations contained in their answer to the effect that plaintiff had deepened and lengthened one of the ditches in dispute, where the trial court did find, although not in the identical words of defendants' pleading, that the plaintiff within a certain time had enlarged said ditch by deepening and widening the same, and that the plaintiff "be required to reduce the size of the ditch on her lands" to stated dimensions, and to fill in said ditch to the given capacity between certain points.

[4] ID.—FLOOD WATERS—RIGHT OF DEFENDANTS TO PROTECT AGAINST—JUDGMENT.—In such an action, the defendants were under no obligation to receive over their lands and care for flood waters, and it was error, therefore, to enjoin them from erecting dams to protect themselves against flood waters.

APPEAL from a judgment of the Superior Court of Santa Clara County. J. R. Welch, Judge. Reversed in part; affirmed in part.

The facts are stated in the opinion of the court.

D. M. Burnett and Geo. W. Waldorf for Appellants.

1. Right to embank against flood or overflow from stream, notes, 16 A. L. R. 629; 22 A. L. R. 956; 21 L. R. A. 593.

S. G. Tompkins and J. P. Sex for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to enjoin the defendants from obstructing certain alleged watercourses. The defendants answered by denying many allegations and at the same time filed a cross-complaint asking that the plaintiff be enjoined from cutting and maintaining certain ditches and discharging across the lands of the defendants excess waters. A trial was had before the trial court sitting without a jury. On certain issues the trial court found for the plaintiff and on some issues it found for the defendants, but the defendants, being dissatisfied with the judgment, have appealed.

The plaintiff and defendants owned adjoining farms located northeast of San Jose. The plaintiff's farm is on the south side and is the higher ground, and the farm of the defendants is on the north side and is the lower ground. All of the lands are crossed by four watercourses, which parallel each other and extend from the southeast to the northwest. The first one we shall call the slough AB, which runs under the bridge which the engineer, Mr. Hermann, adopted as the bench for his survey; the second one we shall call CD, and is the watercourse which was by the parties on the trial spoken of as number one; the third one we shall call EF, and is the watercourse the parties spoke of on the trial as number two; and the fourth one was by the parties called and is generally known as Coyote River.

In pleading her case the plaintiff asserted her alleged wrongs in four counts. The first two counts were addressed to the watercourse CD, and the last two counts were addressed to the watercourse EF. In the first count she alleged that the watercourse CD was a natural depression which from time immemorial had drained the rain and flood waters from plaintiff's land. In the second count she alleged that the watercourse CD was an artificial ditch which had drained said waters for twenty years last past, and that her use had been peaceable, etc. Her allegations differed in the same respect regarding the watercourse EF. After denying many of plaintiff's material allegations, the defendants pleaded affirmative allegations in their answer, and repeated in a cross-complaint as follows: "That in the year 1918, without the consent of defendants or either of

them the plaintiff constructed a large ditch of a depth of over four and one-half feet and of a width in the bottom of over two feet and with gradually sloping sides to the top of said ditch so that the same is over seven feet wide at the top thereof. That said ditch so constructed runs generally from defendants' southerly line in the southeasterly direction over plaintiff's lands for a distance of one thousand feet and then turns in an easterly direction on plaintiff's lands a distance of over twelve hundred feet. That plaintiff constructed on the westerly side of the portion of said ditch running northerly and southerly an embankment of earth of over three feet in height and on the northerly side of the portion of said ditch running easterly an embankment of earth of over three feet in height. That without the consent of defendants or either of them the said plaintiff at the time she constructed said ditch, wrongfully and without right continued said ditch in the northerly direction over the land of defendants for a distance of over three hundred feet."

The findings made by the trial court were to the general effect that the watercourse CD was an artificial ditch as claimed by the plaintiff; that as the same stood at the day and date somewhat less than five years before the commencement of the action it had a capacity equal to a ditch three feet wide on top, one and one-half feet wide at the bottom, and two feet deep, and thereupon the trial court ordered a box, wooden or concrete, having said dimensions, inserted by the plaintiff on the boundary line in said watercourse. As to the watercourse EF, the trial court found that a natural depression existed at said place and that the water-carrying capacity of said depression was equal to a ditch of the same dimensions and ordered a box of said dimensions inserted at said point. The court also by its findings limited the plaintiff from discharging waters in excess of the carrying capacity of said two boxes across the lands of the defendants, and the court enjoined the defendants from obstructing such waters as might flow through the two boxes mentioned.

On this appeal the appellants make four points, which they state as follows: (1) The evidence does not sustain the finding that rain waters are carried from the lands of plaintiff to the lands of defendants; (2) the trial court erred in directing the installation of the box of the dimensions stated;

(3) the court failed to find on certain allegations contained in the answer of the appellants; and (4) appellants are not obligated to take flood water from plaintiff's land.

[1]    (1) The contention that the evidence does not show that rain waters are carried across the lands of plaintiff on to the lands of defendants cannot be sustained.    There is an abundance of evidence in the record that the zone in question has two slopes; it slopes from the Coyote River to the west, and it slopes from the south to the north, and there is an abundance of evidence in the record that at times waters flow from the southerly side of the plaintiff's land across her land, and thence in a northerly direction across the lands of appellants.

[2]    (2) The second point made by the appellants is likewise without merit.    Except as noted below, the trial court did not, in ordering the installation and maintenance of the box-outlets, require the plaintiff to take flood waters. Neither was the location of the box at number one uncertain.    It was to be located at a stake shown on defendants' exhibit No. 2, and which stake is located almost immediately adjacent to the *bench* hereinabove referred to and the top of which stake the engineer testified was 99.16.    In this behalf we note that the appellants contend that the bottom of the box will be .33 of a foot lower than the bottom of the present ditch.    If appellants had any objection to that slight discrepancy they should have called the attention of the trial court to the matter.    However, as we understand the record, the location and dimensions of the box at number one was, in legal effect, assented to in open court by the appellants *in propria persona*.    The objection to the location and size of the box at number two is equally without merit.    As we have stated above, the court found that at the point known as number two there was a natural swale.    One witness testified that from one side of the swale to the other side it was approximately forty feet.    The swale had uniform sloping banks.    One witness testified that the lowest point was probably about one foot deep.    In the presence of counsel the trial court stated that he was ''about to fix the dimensions of that box the same as the other box.''    Neither of the appellants nor their attorney made any objection thereto. If the trial court made any error regarding the size or loca-

tion of the boxes we think that the error was not such as would warrant a reversal.

[3] (3) Before the commencement of the action the plaintiff had deepened the watercourse known as CD and at a point approximately in the middle of her farm she had made a right angle turn and had lengthened and deepened that ditch. This fact was pleaded by the defendants in their answer and in their cross-complaint. The trial court did not find on those allegations in the identical words of the pleadings of the defendants. However, the trial court did, in its own method, find on, and fully deal with, the subject matter of the allegations just mentioned. In finding number XII the trial court found that the plaintiff, within the last two years, had "enlarged the artificial ditch mentioned in paragraph IV of these findings, by deepening the same to a depth of three and one-half feet and widening the same to a width of approximately two feet at the bottom and five feet at the top." It further found that the plaintiff "be required to reduce the size of the ditch on her lands as mentioned in paragraph IV of these findings, so that the same will not exceed a depth of two feet below the natural surface and slope of plaintiff's land nor be of a greater width than three feet at the top or of one and one-half feet at the bottom, which said ditch is to be so filled in to such capacity aforesaid from said box southerly to or near the westerly end of a transverse ditch now existing about midway of said ditch mentioned in said paragraph IV, and from such midway point southerly said ditch shall be maintained as now existing gradually becoming shallower from said point to the southerly end thereof."

(4) Counsel for the appellants contend that although the appellants had no right to obstruct the flow of surface waters without first providing ditches, canals, and outlets of sufficient capacity to carry such surface waters as the said waterway was accustomed to carry, nevertheless the appellants had the right to protect their land from flood waters. This contention is sound. In her brief the respondent does not contest the point, but treats the matter as though the point was not involved. We have read the entire bill of exceptions and the point was not involved, so far as the introduction of evidence was concerned, in the trial court,

neither did that court make any ruling to the contrary. On the other hand, having heard the evidence and indicated to counsel the issues on which the trial court was minded to decide in favor of the plaintiff, and on which it was minded to decide in favor of the defendants, thereupon the trial court directed the attorney for the plaintiff to prepare the findings. Thereafter findings and judgment were prepared, signed, and filed. In each count of her complaint, in describing the waters which the defendants were obstructing, the plaintiff used the expression "rain and flood waters." In preparing the findings and judgment the same words were used in describing the waters. [4] As stated above, the appellants were under no obligation to receive over their lands and care for flood waters. (*McDaniel* v. *Cummings*, 83 Cal. 515 [8 L. R. A. 575, 23 Pac. 795].) It was error, therefore, to enjoin the appellants from erecting dams to protect themselves against flood waters. The record shows affirmatively that in comparatively recent years Coyote River has overflowed its banks, flowing out over the lands of the plaintiff and thence over the lands of appellants. It may do so again. In the event that it does do so the appellants should not be confronted with a judgment which enjoins them from protecting themselves against such flood waters.

As to the issue of and concerning flood waters, as that expression was used in plaintiff's complaint and carried into the findings and into the judgment, the judgment is reversed; as to all other matters the judgment is affirmed. And it is further ordered that appellants do have and recover their costs on appeal.

Langdon, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 15, 1923, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing is denied. The appellants assume that the court overlooked the evidence of and concerning surplus artesian well water. That water was not specifically designated in the pleadings or in the findings. True, it was referred to by some of the witnesses, but no ruling by the trial court was either asked for or made

thereon. We, therefore, did not think this matter involved upon the appeal presented to us.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 15, 1923.

All the Justices concurred.