**K. Patrick KRUCHTEN, Marcy Kruchten, husband and wife, James R. Anderson, Karen S. Anderson, husband and wife, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 89–5379.**

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1990.
Decided Sept. 24, 1990.

James R. Anderson, Marshall, Minn., for appellants.

Jonathan B. Wiener, Washington, D.C., for appellee.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

K. Patrick Kruchten, *et al.* (hereinafter "Kruchten") appeal the district court's [1] summary judgment award to the United States in an action brought under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 2671–2680 (1988). We affirm.

## I. BACKGROUND

Kruchten is the owner of farm land along the Minnesota River in Yellow Medicine County, Minnesota, which lies adjacent to land held in trust by the United States for the Upper Sioux Indian Community. In 1984 waters on the Minnesota River washed out a man-made embankment on the Sioux land, cutting a new channel across that land and Kruchten's property. The embankment at issue was built prior to 1938, when the United States acquired title to the land on behalf of the Sioux. It is not known who built the embankment. Clearly the flooding involved here would have taken place had the embankment never been erected. The United States was informed of the flooding in 1984. No repairs have been made.

Initially, Kruchten sought unsuccessfully to obtain administrative relief through the Department of the Interior. However, despite the fact that the St. Paul, Minnesota division of the Army Corps of Engineers in 1987 conducted a study of the situation, pursuant to the Flood Control Act, 33 U.S.C. §§ 701–709b (1988), and recommended that a project to repair the washout be initiated, the Corps' Washington D.C. office informed personnel in St. Paul during a telephone communication that it would not authorize the project.

In 1988 Kruchten filed a four-count complaint against the United States seeking damages of $28,665.00, which represent the value of failed crops on the relevant land for the years 1985–1987. In the various counts Kruchten alleged the United States was negligent in its maintenance of the embankment. Kruchten made the claim that *"purposeful* refusal of the defendant to repair the [embankment] in 1984, or at any time thereafter, does constitute not only negligence, but actually purposeful trespass by diverted water." In addition, Kruchten claimed that a fifth amendment "taking" of his property had occurred,[2] and that the water which flowed across his property constituted a nuisance.

The government sought summary judgment on the grounds that it is immune from such a claim under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), and that it had no actionable duty to Kruchten. The district court found that there was no basis for government liability here.

■■■ The law of the state in which the alleged tort occurred—in this case, Minnesota—governs all substantive issues in a Federal Tort Claims case. *See United*

---

1. The Honorable Edward J. Devitt, United States Senior District Judge, District of Minnesota.

2. According to Kruchten, an action before the United States Claims Court on an inverse condemnation claim is currently pending. We note this may well be the proper forum for an alleged "taking" of property case. *See United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946); *Barnes v. United States,* 241 F.2d 252, 255 (9th Cir.1956); 28 U.S.C. § 1491 (1988).

*States v. Slone,* 405 F.2d 1033 (8th Cir. 1969). We afford great deference to state law rulings of district court judges who sit in the state where the law must be determined. *See Economy Fire & Cas. Co. v. Tri–State Ins. Co.,* 827 F.2d 373, 375 (8th Cir.1987). Usually we overturn such rulings only if they are "fundamentally deficient in analysis, without a reasonable basis, or contrary to reported state court opinion." *Id.*

## II. DUTY OF CARE

On appeal, Kruchten concedes that the district court was correct in its order insofar as it applied the law on the first two theories of relief which he raised.[3] He contends, however, that the failure of government to comply with an alleged duty to maintain the embankment was negligent conduct. He argues that the district court erred in its determination that *Kunz v. Utah Power & Light Co.,* 526 F.2d 500 (9th Cir.1975), upon which he almost exclusively relies, did not provide the basis for relief under his negligence/trespass theory. Kruchten contends that *Kunz* supports his position that the United States had a duty to repair the washed-out embankment.

In *Kunz,* the Ninth Circuit held that downstream landowners established liability against Utah Power and Light Company for negligent operation of a water storage system. The company in 1917 had dammed and diverted a river for irrigation purposes, and later the plaintiffs suffered damages when their land was flooded after heavy spring runoffs. The *Kunz* court concluded that the company had a duty to protect the landowners from flooding because the landowners demonstrated reasonable reliance on the company's affirmative acts in damming the river.

The district court distinguished *Kunz* in two primary respects. First, in *Kunz,* the power company had *dammed* the river, thereby diverting its flow. By contrast, in this case, the government merely *acquired* property upon which an embankment had already been built. Second, in *Kunz,* there was evidence that the landowners relied upon the power company with regard to flood control protection. Evidence of consultations about flood control between the parties, a change in the type of farming in which the landowners engaged beginning at the time of the defendant's construction of the water storage system, and efforts actually to minimize flooding, all considered together were significant factors to the *Kunz* court in finding reliance. In contrast, the district court here found that there were "no consultations with plaintiffs or other actions by defendant such as to create a relationship which would justify plaintiffs in relying on the United States to prevent such flooding".

Kruchten argues that although there is no indication of reliance in the record, there is nothing in the record to indicate an *absence* of reliance. The use of such a "negative," however, is not a sufficient showing of reliance for the plaintiffs' negligence claim to survive summary judgment. *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (noting that summary judgment is warranted "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

There are other distinctions between *Kunz* and the instant case. In *Kunz,* the defendants actually diverted the course of the river. Here, by contrast, the builder of the embankment, whoever it might have been, simply sought to maintain the stream in its channel and prevent it from running across his land. Such defensive conduct in our view does not under applicable law engender the kind of relationships, nor the duty, found to exist in *Kunz.*

---

**3.** First, Kruchten relied upon the seminal case of *Rylands v. Fletcher,* L.R. 3 H.L. 330 (1868), arguing below that a strict liability theory was applicable. Next, he contended that *Mathewson v. Hoffman,* 77 Mich. 420, 43 N.W. 879 (1889), provided support for a trespass theory buttressed by a prescriptive easement claim. Because appellant does not now disagree with the district court's disposition of these issues, we do not further consider them.

There is, in general, no duty to protect another from injury or harm which might befall him or her. *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979). Nevertheless, in some circumstances one who gratuitously accepts the responsibility of acting to protect another must utilize due care even though no duty would exist otherwise. *See Isler v. Burman*, 305 Minn. 288, 295, 232 N.W.2d 818, 822 (1975).

Moreover, "[i]n the absence of contract, custom, or statute, no duty is imposed by common law ... upon one who erects a dike for flood protection of lands...." *Clark v. United States*, 109 F.Supp. 213, 219–20 (D.Or.1952); *see also Higgins v. Monckton*, 28 Cal.App.2d 723, 733, 83 P.2d 516, 522 (1938) (holding there is no possibility of negligence claim against landowner for failing to maintain levee to insure others against flooding). There is no indication in the Minnesota authorities of any contrary rule. *Cf. Kray v. Muggli*, 84 Minn. 90, 100–01, 86 N.W. 882, 886 (1901) (stating in dicta that there is no duty on the part of an owner of a dam to maintain it in good repair).

In *Kunz*, the court of appeals wrote:

'The question appears to be essentially one of whether the defendant has gone so far in what he has actually done, and has gotten himself into such a relationship with the plaintiff, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him.'

*Kunz*, 526 F.2d at 503 (quoting W. Prosser, The Law of Torts § 56 (4th Ed. 1971)). Whereas in *Kunz*, the defendants acted affirmatively to create a relationship with the plaintiffs and affect their interests, in our view, the government has done very little here other than buy land. We do not believe such purchase alone gives rise to a relationship from which a duty to ensure neighboring lands against flood damage can be found, whether one be a private citizen or the United States government. We therefore defer to the district court, and find no such duty under Minnesota law.

## III. TRESPASS

We now examine the question whether Kruchten has a valid trespass claim under the law of Minnesota. In Minnesota, "unpermitted invasion of premises constitutes trespass *quare clausum fregit.*" *Whittaker v. Stangvick*, 100 Minn. 386, 388, 111 N.W. 295, 296 (Minn. 1907). It is immaterial by what means or instrumentality the trespass takes place. *See id.* Many of the Minnesota cases involving trespass to land discuss "positive trespass" as clearly actionable. *See, e.g., Newman v. St. Louis County*, 145 Minn. 129, 176 N.W. 191 (1920). However, in contrast to the case at hand, most of these cases involve surface waters, not watercourses. *Cf. Pye v. City of Mankato*, 36 Minn. 373, 375, 31 N.W. 863, 864 (1887) (noting that "a city will be liable if it collects and gathers up surface water by artificial means, such as sewers and drains, and casts it upon the premises of another in increased and injurious quantities"). We believe the Minnesota courts would not see enough affirmative action in the conduct of the defendant here to constitute positive trespass.

"One is subject to liability to another for trespass ... if he intentionally ... causes a thing [to enter the land of another] or ... fails to remove from the land a thing which he is under a duty to remove." Restatement (Second) of Torts § 158 (1965). It is, of course, arguable that the failure of a party to maintain a dike would constitute "causing" the water to flow onto plaintiffs' land. *See id.* comment i. And "[o]ne who takes possession of land upon which there is an ... artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition...." Restatement (Second) of Torts § 366 (1965). But "a cause of action for trespass does not arise from mere omission to perform a duty; there must be some affirmative act by violence or force, direct or imputed, and the injury must be immediate and not consequential." 87 C.J.S., *Trespass* § 4, at 958 (1954).

The question is most often considered not in the circumstances at bar, which we have found somewhat unusual, but in the context of the *initial* right of a riparian landowner to construct dikes, embankments, or other structures to maintain or restore the bank of a stream to prevent flooding. *See generally* Annotation, *Right of Riparian Owner to Construct Dikes, Embankments, or Other Structures Necessary to Maintain or Restore Bank of Stream or to Prevent Flood*, 23 A.L.R.2d 750 (1952) (listing cases). The usual issue, therefore, is whether a riparian owner may construct such a structure to protect his own land, even though this may cause damage to another when additional waters are cast upon his land. Consequently, to the extent there is law on the question before us now, that is, whether this "invasion of water" is a trespass under the law of Minnesota, the parties have indicated this is a case of first impression. We have found no authority to suggest this assessment is incorrect.

An old case, however, does provide some guidance. In that case, which involved an embankment built on the Canadian River in Indian Territory, this circuit held that

> [a] riparian owner may construct the necessary embankments, dikes, or other structures to maintain his bank of the stream in its original condition, or to restore it to that condition, and to bring the stream back to its natural course; and if he does no more, riparian owners upon the opposite or upon the same side of the stream can recover no damages for the injury his action causes them.

*Gulf, C. & S. F. Ry. v. Clark*, 101 F. 678, 680–81 (8th Cir.1900). Although this case by no means settles the issue at hand, it does provide some support for the general proposition that one may repel water which invades his land, despite consequences to others.

We have found no Minnesota case law which supports a trespass theory where a vendee takes land upon which an embankment already exists and then elects not to repair the embankment after subsequent deterioration. The district court not unreasonably concluded that no basis for government liability existed. In the circumstances, we will not disturb this determination as it relates to a trespass claim.

## IV. DISCRETIONARY FUNCTION EXCEPTION

Even if there were a duty under *Kunz*, if the decision not to repair the embankment was one made by government officials exercising policy judgment, then the government may not be sued under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). *See Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953) ("Where there is room for policy judgment and decision there is discretion."); *Hurst v. United States*, 882 F.2d 306, 310–11 (8th Cir.1989).

However, since we have already concluded that the district court did not err in holding there is neither a duty nor a trespass under Minnesota law, we need not determine whether the action or inaction by the government here falls within the discretionary function exception.[4]

Since Kruchten made no allegations in his complaint which give rise to contested factual issues, summary judgment for the government is warranted. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. For all the reasons set out above, the order of the district court is affirmed. In so holding, we emphasize that we express no opinion on the merits of the related action which Kruchten stated at oral argument was pending before the Court of Claims.

---

**4.** Finally, Kruchten argues that the government was negligent pursuant to the doctrine of res ipsa loquitur, as discussed in *City Water Power Co. v. City of Fergus Falls*, 113 Minn. 33, 128 N.W. 817 (1910). Because Kruchten raises the res ipsa loquitur issue for the first time on appeal, we decline to consider that issue. *See Estes v. United States*, 883 F.2d 645, 648 (8th Cir.1989).