**UNITED STATES of America, Plaintiff,**

v.

**MARGARITAS MEXICAN RESTAURANT, INC., Defendant.**

**Civ. A. No. 91–0028–CV–W–9–2.**

United States District Court, W.D. Missouri, W.D.

Sept. 16, 1991.

---

Douglas Frazer, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Stephanie Hazelton, Swartzman, Thomas, Hazelton, Lane, & Batson, Kansas City, Mo., for defendant.

## ORDER

ROBERT E. LARSEN, United States Magistrate Judge.

Before the United States Magistrate Judge is the issue of whether the defendant, Margaritas Mexican Restaurant, Inc., may assert the Missouri accountant-client privilege, Mo.Rev.Stat. § 326.151, in this federal question case. Because I find that State law does not provide the rule of decision in this case, and because federal law does not recognize an accountant-client privilege, defendant Margaritas Mexican Restaurant, Inc., taxpayer H.M. Agency, Inc., and the accountant, Mr. Jeffrey Katz, may not properly rely on that privilege to avoid answering the questions posed by the United States.

## I. BACKGROUND

H.M. Agency, Inc., (hereinafter "HMA") was incorporated on August 2, 1978. David Quirarte, Jr., Ronald Abarca, and Craig Ayers formed a partnership which purchased stock in HMA. Quirarte, Abarca and Ayers became officers and directors of HMA. Among other things, HMA operated Margaritas Mexican Restaurant. In certain quarters of 1987 and 1988, the Internal Revenue Service (hereinafter "IRS") was unable to collect federal employment and unemployment taxes owed by HMA. IRS Revenue Officer Robert Kyle contacted HMA in the summer of 1988, and was referred by HMA to its accountant, Mr. Jeffrey Katz. Between August 22, 1988 and September 7, 1988, Kyle had at least 5 communications with Katz concerning the taxes.

In 1988, a new corporation, defendant Margaritas Mexican Restaurant, Inc., (hereinafter "Margaritas") was formed. Quirarte, Abarca and Ayers [1] were the sole shareholders, officers and directors. Mr. Jeffrey Katz became the accountant/bookkeeper for Margaritas, handling the accounts receivable, the payroll, and the taxes. Katz paid Margaritas' bills and its employees by stamping Quirarte's signature on checks.

During the first week of October, 1988, Margaritas acquired the assets of HMA. As part of the transfer, Margaritas executed a promissory note in favor of HMA in the amount of $50,000.00 to be paid in monthly installments over 20 years.

On November 8, 1988, the IRS served a levy on defendant Margaritas for the out-

---

**1.** Craig Ayers is no longer a shareholder, officer, or director of Margaritas.

standing liability of HMA. In defense of the levy, Margaritas claimed that it had exercised set-off rights under the promissory note and that the note had been prepaid in full as of the date of the levy. HMA forfeited its corporate charter on July 23, 1990.

On April 19, 1991, the United States took the depositions of Quirarte and Abarca. Neither could answer any of the government's questions regarding the $50,000 promissory note which is the subject of the levy. Neither Quirarte nor Abarca could answer any questions regarding the money owed by HMA prior to the transfer, the alleged payment of those debts by Margaritas (which is the basis of defendant's set-off defense), or the terms of the asset purchase agreement between HMA and Margaritas. Abarca knew nothing about the finances of Margaritas or the $50,000 promissory note. He said he thought Ayers and Quirarte handled the asset purchase agreement and Katz handled Margaritas' finances. Quirarte told government counsel that Katz handled anything having to do with the promissory note. On several occasions, government counsel was directed by Quirarte to speak to HMA's and Margaritas' accountant, Jeffrey Katz.

The United States then subpoenaed Mr. Katz to appear for a deposition and to produce documents that showed, evidenced, or discussed the transfer of assets, the terms of the exchange, and the satisfaction of any debt or obligation owed by defendant Margaritas to HMA or by HMA to Margaritas. At the deposition on June 19, 1991, Katz declined to answer the following questions: (1) Did HMA fall behind on its federal tax deposits? (2) Did HMA sell its assets to Margaritas? (3) Did you talk or meet with counsel for HMA and Margaritas between the first meeting with Mr. Kyle and the transfer of the assets? (4) Why was Margaritas incorporated? (See Katz deposition at pages 31, 37, 40, 44).

Katz subsequently answered the first three questions. In refusing to answer the fourth question, which was previously posed without objection to both Quirarte and Abarca during their depositions, Katz asserted the Missouri accountant-client privilege.[2] Defendant Margaritas seeks to claim the protection of that privilege. The two shareholders of Margaritas (Quirarte and Abarca) also owned an interest in HMA. Their attorney stated that neither shareholder had indicated whether or not he would be willing to waive the accountant-client privilege as to communications between Katz and HMA.

The record remains unclear as to whether HMA, a defunct corporation, even has a right to assert the privilege.

It is also unclear whether the information sought from Katz actually falls within the scope of the accountant-client privilege. Much of the information sought by the government appears to be bookkeeping information rather than accounting information. Furthermore, because neither Quirarte nor Abarca knew the answers to the questions that Katz refused to answer, the question arises whether the information sought was communicated to Katz by his client. The Missouri accountant-client privilege only applies to communications "made by the client" to the accountant.

In addition, the deposition testimony of Quirarte strongly suggests that any accountant-client privilege that may have existed was waived when Quirarte referred the government to Jeffrey Katz for answers to questions he did not know.

In any event, because I find that State law does not provide the rule of decision and that no accountant-client privilege exists under federal law, these questions need not be resolved.

## II. APPLICABILITY OF ACCOUNTANT–CLIENT PRIVILEGE

 No confidential accountant-client privilege exists under federal law; and in a

---

**2.** Mo.Rev.Stat. § 326.151, "A certified public accountant or a public accountant shall not be examined by judicial process or proceedings without the consent of his client as to any communication made by the client to him in person or through the media of books of account and financial records, or his advise, reports or working papers given or made thereon in the course of professional employment ..."

fundamentally federal proceeding, the court may not recognize a state-created privilege. *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973).

■ There is no question that a "failure to honor levy" action is fundamentally a federal proceeding, and indeed defendant does not dispute this point. Rather, defendant argues that Rule 501 of the Federal Rules of Evidence[3] applies in this case because the accountant's testimony concerns a claim or defense as to which State law supplies the rule of decision, i.e., whether Margaritas was in possession of property or rights to property belonging to HMA as of the date of the IRS levy.

Rule 501 does not apply in this case. The provision for state law in Rule 501 was designed to "require the application of State privilege law in civil actions and proceedings governed by *Erie R. Co. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938)[4].... The rationale underlying the proviso is that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason." *See* Notes of Committee on the Judiciary, House Report No. 93–650. In adopting the House provision of Rule 501, the Conference Committee stated:

> In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law.... When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a

rule derived from the state decision), and state privilege law would not apply.

*See* Notes of the Conference Committee, House Report No. 93–1597.

In this federal question case, the court looks to state law for the definition of the phrase "property or rights to property" found in the Internal Revenue Code. *Aquilino v. United States,* 363 U.S. 509, 514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). The fact that Missouri law is used to give meaning to the phrase "property or rights to property" in the Internal Revenue Code does not mean that, for purposes of Rule 501, State law supplies the rule of decision on this issue. Rather, Missouri law is incorporated as the federal rule of decision. *Hanes v. Mid–America Petroleum, Inc.,* 577 F.Supp. 637, 645 (W.D.Mo. 1983), citing *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979).

Defendant argues that *Schuler v. United States,* 113 F.R.D. 518 (W.D.Mich.1986), presents a "precise analogy" to the present case. The court in *Schuler* allowed the Michigan physician-patient privilege to be invoked in a case brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (hereinafter "FTCA").

Although the defendant correctly states that *Schuler* was a federal question case and that State law provided the rule of decision, defendant misapplies that decision to the case at hand. Congress, in enacting the FTCA, specifically provided for the use of State substantive law in all cases brought under the FTCA. The policy behind the FTCA was to hold the United States liable for torts to the same extent a private person would be held liable. *See* 28 U.S.C. § 2672. Clearly, in a tort suit against a private person, whether in state or federal court, State law would be used and would provide the rule of decision.

---

**3.** "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law."

**4.** In *Erie* the Supreme Court held that federal courts must apply state substantive law in diversity cases.

*Kruchten v. United States,* 914 F.2d 1106, 1107 (8th Cir.1990).

By contrast, this suit was brought pursuant to 26 U.S.C. § 6332(d), which does not provide for the use of State law. Furthermore, the sole defense to this federal action, that the defendant did not possess property or rights to property subject to the levy or that such property or rights to property were otherwise subject to an attachment or execution under judicial process, is found in 26 U.S.C. § 6332(a). As a result, any State law referred to by the court in this case will be absorbed into federal law and will not provide the rule of decision. Therefore, Rule 501 of the Federal Rules of Evidence does not apply; and because federal law does not recognize an accountant-client privilege, defendant Margaritas, HMA, and Mr. Katz may not assert such a privilege in this case.

Therefore, it is

ORDERED that Mr. Jeffrey Katz, accountant for HMA and Margaritas, answer the Government's questions without relying on the accountant-client privilege.