UNITED STATES of America,
Plaintiff—Appellee,

v.

Anthony G. DIPACE, Defendant—
Appellant.

No. 01–10178.

D.C. No. CR–99–00099–DAE.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 2002.

Decided July 24, 2002.

Before SCHROEDER, Chief Judge, D.W. NELSON and REINHARDT, Circuit Judges.

## MEMORANDUM *

Anthony DiPace appeals his jury conviction and sentence for multiple counts of mail fraud in violation of 18 U.S.C. § 1341. DiPace was convicted for making false statements in an application to serve as investment monitor for a Taft–Hartley pension fund.

## TRIAL ISSUES

He first contends that his misstatements were not material. His application, however, grossly overstated his qualifications by claiming that he had forty Taft–Hartley fund clients, when he only had three; that ten Taft–Hartley clients had assets in excess of $100 million, when none did; and that he had been recognized for thirteen years as a top performer of the brokerage firm with which he was affiliated, when he had been so recognized in only one year. Trustees of the pension fund testified at trial that his claimed prior experience was to them an important job qualification. The Supreme Court has said that the standard for materiality is whether a false statement has a "natural tenden-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

cy to influence, or is capable of influencing," the decision maker. *Neder v. U.S.*, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The false statements here, according to the testimony of the trustees, not only could have influenced them, but did influence their determination that DiPace was a highly qualified candidate. The materiality requirement was satisfied.

■ DiPace also contends that the trustees should have verified the veracity of his statements, relying on an "independent source" rule. *See e.g., Assocs. in Adolescent Psychiatry, SC v. Home Life Ins. Co.*, 941 F.2d 561, 570–71 (7th Cir. 1991). This court has not adopted such a rule, noting that it is inconsistent with the law of this circuit. *See U.S. v. Hanley*, 190 F.3d 1017, 1023 & n. 2 (9th Cir.1999). Moreover, even in the Seventh Circuit, which has adopted it, fraud victims are not required to undertake an investigation of the veracity of all statements. Rather, only a misstatement that can easily be detected by information in a readily available public record is not fraudulent. The truth or falsity of DiPace's statements could not be checked against any readily available public records. They were fraudulent.

■ In a related argument, DiPace contends that the instruction on materiality was erroneous. There was no objection, so we review for plain error. *U.S. v. Dipentino*, 242 F.3d 1090, 1094 (9th Cir. 2001). The judge instructed the jury that to convict, it must find that a false representation was made of a kind that "could influence a person or other entity to part with money." The formulation is consistent with the Supreme Court's discussion in *Neder*, which is the controlling authority in mail fraud cases. There was no plain error in the use of the word "could" rather than "would" in the instruction as DiPace belatedly contends.

■ DiPace challenges the admission of evidence of other bad acts, the most significant being his less than truthful application to Moors & Cabot and the churning of the Local 190 Welfare Fund Account. At trial, the defense was that another LPL employee, not DiPace, had prepared the offending portion of the pension fund application and that the false information must have been a mistake. The Moors & Cabot application was admitted to show absence of mistake. The Local 190 Welfare Fund was admitted to show motive, because of the proximity in time of discovery of that fraud to the application involved here. The district court gave limiting instructions with respect to the challenged evidence of other bad acts, telling the jury that it could consider those acts only as showing motive, opportunity, plan or purpose, not as evidence of guilt in this case. We find no error.

■ DiPace also contends that the district court committed plain error in admitting evidence that DiPace did not respond to a letter from LPL requesting information about lies on the application to the pension fund. The Fifth Amendment's privilege against self-incrimination does not apply to questioning by a non-governmental actor. *U.S. v. Oplinger*, 150 F.3d 1061, 1066–67 (9th Cir.1998).

■ DiPace complains of the prosecutor's questioning concerning union-management disputes at the pension fund, but this subject was raised by the defense as part of its theory that the trustees were not influenced by DiPace's false statements. DiPace similarly challenges questions by the prosecutor on cross-examination of Peter Perry. DiPace contends that the questioning injected irrelevant evidence of a luxurious lifestyle. The questioning was, however, in the nature of impeachment to suggest the witness' possible

motivation to lie on account of DiPace's largesse. There was no abuse of discretion in permitting the questioning.

DiPace also contends that the district court abused its discretion in denying DiPace's motion for a mistrial, which was based on allegations of prosecutorial misconduct. These allegations largely consist of DiPace's objections to the introduction of evidence, discussed above. DiPace has not drawn our attention to any instances of prosecutorial misconduct that could have affected the verdict in this case, and we therefore affirm. *U.S. v. Sarkisian,* 197 F.3d 966, 988 (9th Cir.1999).

## SENTENCING

■ The district court increased the base offense level of six by twelve points based on a calculated loss of approximately 1.5 million dollars. This estimate was based in major part upon speculation that had the pension fund hired DiPace, it would have "lost" the total amount of salary and commissions he would have received for one year. There is no evidentiary basis for any such finding, and, indeed, no evidence that DiPace intended to cause the pension fund any out-of-pocket loss. In addition, the district court included, as "loss", the commissions that DiPace earned from other clients while his pension fund application was under consideration. That income was not received as a result of any conduct relevant to the crime charged. The increase of twelve points for intended loss was error. The two point increase for abuse of position of trust, under U.S.S.G. § 3B1.3, also appears to be in relation to DiPace's services for his other clients. It is not related to this fraud, and this enhancement was also error.

The district court also increased the base offense level by two points for more than minimal planning. *See* U.S.S.G. § 2F1.1. This is supported by the evidence and not challenged on appeal. Similarly, DiPace does not challenge the two point increase for violation of a judicial order imposed as a result of lying during court-ordered arbitration. *See* U.S.S.G. § 2F1.1(b)(4)(c). DiPace also does not challenge the two-point increase for obstruction of justice, imposed under U.S.S.G. § 3C1.1 for the introduction of false testimony at trial. The base offense level of 6, and the three properly imposed two-point enhancements, bring DiPace's total offense level to 12.

We remand for resentencing.

The conviction of the defendant is AFFIRMED and the sentence is VACATED AND REMANDED for resentencing.

REINHARDT, Circuit Judge, concurring in part and dissenting in part.

I respectfully disagree with the majority's resolution of the "other bad acts" issue. I would hold that DiPace's conviction must be reversed because improperly admitted bad act and bad character evidence deprived him of a fair trial. The admission of this evidence was not harmless, but instead warrants reversal.

In order to prove intent and its subset, absence of mistake, the government introduced evidence designed to show that DiPace deliberately lied on his subsequent job application to Moors & Cabot. A bad act is not admissible to prove intent unless it is sufficiently similar to the charged offense. *United States v. Luna,* 21 F.3d 874, 878 & n. 1 (9th Cir.1994) (terming similarity a "prerequisite" to using bad acts to prove intent). In this case, the two acts were not similar enough to meet this requirement. DiPace's Pension Fund application contained affirmative, material misstatements, which formed the basis for his prosecution. In contrast, on his Moors & Cabot application, DiPace simply failed to list fully certain negative information such as the *number* of tax liens and ad-

verse lawsuits. Traditionally, the law draws a clear distinction between acts and omissions. *See, e.g, Chiarella v. U.S.,* 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) (describing difference between act and failure to act); *Kunz v. Utah Power & Light Co.,* 526 F.2d 500 (9th Cir.1975) (same); Restatement (Second) of Torts § 551 (Liability for Nondisclosure) (same). The kind of minor omissions on the Moors & Cabot application are not similar to the affirmative, false claims about material job qualifications at issue here. The application should not have been admitted to show intent to defraud with respect to the earlier Pension Fund submission. The sole purpose served by the admission of the evidence regarding DiPace's subsequent conduct was to portray him as a bad person, the kind of individual who would be likely to commit fraud. Moreover, to the extent that the prosecutor used this evidence in an effort to persuade the jury that DiPace had a motive to commit fraud because of his debts, the evidence was inadmissible on that basis also. *United States v. Bensimon,* 172 F.3d 1121, 1129 (9th Cir.1999) (quoting *United States v. Mitchell,* 172 F.3d 1104, 1108–09 (9th Cir.1999)).

The government also introduced evidence that DiPace had improperly collected commissions by trading on the account of another client, Local 190. The Local 190 bond trades were introduced as part of a "common scheme or plan." *United States v. Sayakhom* allows the admission of other schemes if the other act and the charged act are intertwined, that is, part of a single criminal transaction. 186 F.3d 928, 938 (9th Cir.1999), citing *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1012 (9th Cir.1995). In this case, the Local 190 bond trades were completely independent of the Pension Fund application, and thus inadmissible as part of a common scheme or plan. Because the Local 190 bond trades were not admissible for any

legitimate purpose, they, too, served to show only criminal propensity. Under *United States v. Iverson,* bad acts that serve only that purpose are not admissible. 162 F.3d 1015, 1026 (9th Cir.1998).

In cross-examining a key defense witness, the government introduced evidence of DiPace's boat ownership and country club membership, as well as the fact that he owed the IRS $200,000. The government claims this testimony was necessary to show Perry's bias in favor of DiPace. However, the prosecution could easily have established Perry's bias without inquiring into the details of DiPace's lifestyle. We have made it clear that we consider lifestyle evidence to have minimal probative value. *See, e.g., United States v. Unruh,* 855 F.2d 1363, 1376–77 (9th Cir.1987) (finding evidence of defendant's fur coat and "wad of bills" relevant only because defendant's display of wealth was integral to his fraudulent scheme, and cautioning that since evidence was inadmissible unless tied to specific criminal acts); *see also Mitchell,* 172 F.3d at 1108–09. Here, the line of questioning bore no relation to DiPace's alleged scheme to defraud. It was highly prejudicial, as it more likely than not caused the jury to infer that DiPace was a high-living individual who got into trouble because he spent more than he earned, that he paid his country club dues but not his taxes, and that he was therefore a bad person-a person likely to commit a financial crime.

The combination of these evidentiary errors was prejudicial to DiPace. Although any of the individual errors may not alone have been prejudicial enough to warrant reversal, we have recognized the importance of evaluating the "cumulative effect of multiple errors" rather than conducting "a balkanized, issue-by-issue harmless error review." *United States v. Frederick,* 78 F.3d 1370, 1381 (9th Cir.1996); *see also Matlock v. Rose,* 731 F.2d 1236, 1244 (6th

Cir.1984) ("Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair."). In this case, the bad acts and character evidence provided almost all of the government's evidence of criminal intent, which was the principal issue at trial.

The cumulative harm was not mitigated by the trial judge's limiting instructions to the jury. Although usually we presume that the jury follows a limiting instruction, *Greer v. Miller*, 483 U.S. 756, 767 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), in some cases the harm is "so prejudicial that a jury would be unable to disregard [it] regardless of the purpose for which [the evidence is] introduced and regardless of any curative instruction." *Thomas v. Hubbard*, 273 F.3d 1164 (9th Cir.2001); *see also White v. Cohen*, 635 F.2d 761, 762–63 (9th Cir.1981) (holding that prejudice flowing from references to unrelated charges against defendant in audiotape used for impeachment purposes could not be cured by limiting instruction). In my view, this is just such a case. The combined effect of the errors here was to overwhelm the jury with evidence that was irrelevant to the crime of mail fraud, but tended to suggest that DiPace was a person who had the propensity to commit fraud. I would hold that the cumulative harm more likely than not affected the verdict, *United States v. Emmert*, 829 F.2d 805, 808 (9th Cir.1987), and therefore that DiPace's conviction must be reversed. Accordingly, I respectfully dissent.